## Woods v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided February 19, 1918.)

Appeal from Kenton Circuit Court
(Criminal, Common Law & Equity Division).

Master and Servant—Railroads—Negligence—Employe Engaged in Interstate Commerce.—There can be no recovery by an employe of a railroad company engaged in interstate commerce un-

less there is some evidence tending to show that the injuries sustained were caused by the negligence of the company.

J. W. RAWLINGS, O. M. ROGERS and RICHARD G. WILLIAMS for appellant.

GALVIN & GALVIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Woods, received injuries while assisting as a track repair hand, in putting a hand-car of the appellee company on the track, and to recover damages for the injuries sustained, he brought this suit. At the conclusion of the evidence for Woods, the trial judge directed a verdict for the company, and Woods appeals.

In the petition it was charged that the railway company was engaged in interstate commerce, and that Woods was employed by it in such commerce at the time he was injured, and here we may stop to say that there is no dispute about this. It was further averred that during one night in September he and other section hands of the company were ordered by the foreman to put a hand-car on the track for the purpose of going to repair some track at a place where it needed attention; that while so engaged he was struck by the hand-car and fell on and against the rails or track and was injured; "That said hand-car was caused to strike and injure the plaintiff as aforesaid by the gross negligence of said employes in the manner and way they handled said hand-car, and the gross negligence of said foreman in ordering an insufficient number of men to handle same, and gross negligence of the defendant in not having a sufficient number of men to handle said hand-car at said time and place, and his injuries, caused as aforesaid, were due to and caused by each and all of said acts of negligence aforesaid."

It will thus be seen that two grounds of negligence were set up: First, the negligence of appellant's co-laborers in the manner in which they handled the car; and, second, the negligence of the company and its foreman in failing to have a sufficient number of men to handle it with safety.

The evidence shows that on the night in question Woods and eleven other track repairmen, who it appears were sleeping in boarding cars on a siding, were ordered

by the foreman, Hicks, to get their hand-car which was in a ditch on the side of the track near the boarding cars and put it on the track and go to the place where the track was out of repair; that when the men had gotten ready, they went to the hand-car and four of them, including Woods, undertook to take it from the ditch and put it on the track, the foreman, Hicks, not being present supervising or looking after what was being done, although he was in a nearby boarding car; that the hand-car weighed about 800 pounds and had four short handles on each end that were used to take hold of and lift the car, which at this time was standing in the ditch about thirty inches below the top of the rail; that the ground between where the hand-car was standing and the ends of the ties as well as the track was wet and slippery on account of a drizzling rain that was falling at the time; that Woods took hold of two of the front handles and a man named Lane took hold of the other two, while two other men took hold of the handles at the other end of the car; that Woods and Lane had their backs towards the hand-car and their faces towards the track and were lifting as well as pulling, while the other two men were lifting and pushing; that while engaged in this work and after the hand-car had been carried eight or ten feet and across one track, Woods' foot or feet slipped and he fell face forward on the other track, receiving the injuries for which he sued; that as soon as he fell, another man took his place and the four men then put the car on the track; that Woods was very familiar with the manner in which the car was to be taken from and put on the track, as he had assisted in these operations many times; that none of the other men who had hold of the car were guilty of any negligence, nor was there any defect in the car or its equipment; nor is there any claim that the ditch or the bank between the ditch and the track, or the track, or any premises about where the car was being removed, were unsafe or out of repair.

Woods in his own behalf said that when Hicks, the foreman, woke him up and said he wanted the men to go to the place where the track was out of repair, he seemed to be in quite a hurry and told him to hurry up and get out; that he wanted twelve men to go; that he woke up some of the men and came back and finished

putting on his clothes; that when he went out to the car some of the men were already there; that he was a little bit excited and the foreman was telling them to hurry up and get the hand-car out; that as soon as he got hold of the car one of the men said, "Let's go!" and another one said, "Boost it, boys!" which meant to push it, and they pushed him on top of the rails and he tripped and fell; that at the time he took hold of the car, and when he got hurt, Hicks, the foreman, was in the boarding car; that there were between twenty and thirty men in the boarding cars and eight of them worked in the gang he worked with; that the foreman ordered twelve men to go and he, Woods, called six of them; that when he went to the hand-car he did not know how many men were there, nor did he look to see how many had told of it; that generally eight men would assist in taking the car off and putting it on the track; that he knew there were more than four men present at the car but did not at the time know how many had hold of it, but that he knew Hicks, the foreman, was not there, as he was in his boarding car; that they were putting the car on the track in the same way that they put it on all the time; that he knew what was meant by the words "boost it" and "let's go."

Sam Napier, one of the men who was helping put the hand-car on the track, said that four men had hold of the car, Lane and Woods in front and himself and Campbell behind; that he was shoving the car when Woods fell; that all of the men were stout, healthy men.

Millard Lane, the only other witness, said the men were called out by Hicks and told to get the car on the track as quick as they could; that twelve men were called out and four of them had hold of the car and the others were around; that Woods told him afterwards that he did not know whether he fell because his pants' leg hung on something or because he stumbled over the rail; that the car was carried between eight and ten feet and Woods fell after they had crossed one track; that after Woods fell another man took his place and then the four handled the car and put it on the right track.

Supplementing what has been already said, it appears from this evidence that the only orders the foreman, Hicks, gave were to wake up twelve men to go on the hand-car and to hurry and get the hand-car. He

gave no orders whatever as to how many men should help put it on the track, or as to how it should be put on the track. It appears, however, that when the four men took hold of the car and were putting it on the track, some of the other men were standing about.

The fact that these men were engaged in interstate commerce does not help the case for Woods, because in no state of case can there be a recovery unless the railroad company has been guilty of negligence of some kind or another through some employe or another, and, there is no evidence or fair inference to show that either the company or any of its employes was guilty of negligence. The fall of Woods was due entirely to the fact that he either stumbled or slipped in crossing the tracks —it was a pure accident for which no one could be blamed.

Putting the car on the track was a very simple thing, and Woods was thoroughly familiar with the method of doing it, as he had assisted many times in taking it off and putting it on the track. If four men were not enough to lift and carry it with safety, and there should have been eight men, this was not the fault of the foreman, as he gave no directions whatever as to how many men should assist in putting the car on the track and was not immediately in charge of the work. Other men were standing about, and evidently the four men who had hold of the car did not think the assistance of the others was needed or they would have called on them. That they were not needed is also made clear by the fact that the car was carried several feet by Woods and the other men, and after he fell and became disabled, another man took his place and these four took the car to the track on which it was to be put.

In all cases in which a directed verdict is ordered, it is necessary that we should, and we do, carefully read and consider the whole of the evidence for the purpose of determining whether the ruling of the trial court in taking the case from the jury was correct, because this is the only question in such cases. In this case we have observed this practice and fail to find any evidence or reasonable inference therefrom that would warrant us in ruling that the trial judge committed error.

Wherefore, the judgment is affirmed.